# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

|  |  |  |
|---|---|---|
| J&M MANUFACTURING CO. INC., | ) | |
| | ) | |
| | ) | Civil Action No. 1:22-CV-00094-CJW-KEM |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge CJ Williams |
| | ) | Magistrate Judge Kelly K.E. Mahoney |
| KINZE MANUFACTURING, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

## DEFENDANT KINZE MANUFACTURING, INC.'S OPENING BRIEF ON CLAIM CONSTRUCTION ISSUES

**McKEE, VOORHEES & SEASE, P.L.C.**
Glenn Johnson (AT0003856)
Jonathan Kennedy (AT0011458)
801 Grand Avenue, Suite 3200
Des Moines, IA 50309-2721
Telephone: 515-288-3667
Facsimile: 515-288-1338
Email: Glenn.Johnson@ipmvs.com
Email: Jonathan.Kennedy@ipmvs.com
Email: mvslit@ipmvs.com

*ATTORNEYS FOR KINZE
MANUFACTURING, INC., DEFENDANT*

# Table of Contents

I.    Background ........................................................................................................... 1

II.   Purpose of Claims Construction ........................................................................ 1

III.  Construction ......................................................................................................... 1

A.   Plain and Ordinary Meaning ............................................................................. 2

B.   Patent Claim Scope ............................................................................................. 4

C.   Present Invention – Limitation of Scope ......................................................... 4

D.   Incorporation by Reference ............................................................................... 5

IV.  CLAIM TERMS IN DISPUTE ......................................................................... 6

A.   FROM ............................................................................................................. 6

B.   MOUNTED ON ........................................................................................... 11

C.   ADJACENT ................................................................................................... 13

D.   A DISCHARGE SPOUT PROJECTING ................................................... 15

V.   INDEFINITENESS ANALYSIS ..................................................................... 16

VI.  CONCLUSION ................................................................................................... 20

**Table of Authorities**

**Cases**

*Anderson v. Int'l Eng'g & Mfg., Inc.*, 160 F.3d 1345 (Fed. Cir. 1998)......................................9

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335 (Fed. Cir. 2012) ...................15

*Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353 (Fed. Cir. 2017).........................................2

*Baxter Healthcare Corp. v. Mylan Labs. Ltd.*, 346 F. Supp. 3d 643 (D.N.J. 2016) ...................3

*Bicon, Inc. v. Straumann Co.*, 441 F.3d 945 (Fed. Cir. 2006)....................................................4

*C.R. Bard, Inc. v. U.S. Surgical Corp.*, 102 F. Supp. 2d. 199, 209 (D. Del. 2000) ...................4

*Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322 (Fed. Cir. 2009)..................................5

*Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314 (Fed. Cir. 2016)..................4

*Fifth Generation Computer Corp. v. Int'l Bus. Mach. Corp.*, 416 Fed. Appx. 74, 2011 WL
    229575 (Fed. Cir., Jan. 26, 2011) ......................................................................................6

*Finjan LLC v. ESET, LLC,* 51 F.4th 1377 (Fed. Cir. 2022) .......................................................6

*Genzyme v. Transkaryotic Therapies*, 346 F.3d 1094 (Fed. Cir. 2003)......................................5

*Halliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244 (Fed. Cir. 2008) ...............18, 20

*Honeywell Int'l, Inc. v. ITT Indus.*, 452 F.3d 1312 (Fed. Cir. 2006)...............................5, 10, 18

*Ingevity Corp. v. BASF Corp.*, 2019 WL 2356978 (D. Del., June 4, 2019)..............................18

*Intell. Ventures I LLC v. Altera Corp.*, 2013 WL 3913646 (D. Del. July 26, 2013)...................3

*Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364 (Fed. Cir. 2014) ...............................16, 19

*Johnson & Johnston Assocs., Inc. v. R.E. Serv. Co.*, 285 F.3d 1046 (Fed. Cir. 2002) (*en banc*)..4

*Kaufman v. Microsoft Corp.*, 34 F.4th 1360 (Fed. Cir. 2022) ....................................................1

*Liberty Ammunition, Inc. v. United States*, 835 F.3d 1388 (Fed. Cir. 2016)............................18

*Mesh Comm, LLC v. PEPCO Energy Servs.*, 2010 WL 5463934 (D. Md. Dec. 29, 2010).........3

*Microsource, LLC v. Eco World Group, LLC*, 587 F. Supp. 3d 770 (N.D. Iowa 2022).............2

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014).......................................2, 16, 19

*Neurografix Patent Litig.*, 201 F. Supp. 3d 206 (D. Mass. 2016) ............................................17

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351 (Fed. Cir. 2008) .......1, 2, 5

*Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir. 2003) ........................................8

iii

*Pacific Coast Building Prods., Inc. v. Certainteed Gypsum, Inc.* 2018 WL 6268880 (N.D. Cal., Nov. 29, 2018) ............................................................................................................. 18

*Paragon Solutions, LLC v. Timex Corp.*, 566 F.3d 1075 (Fed. Cir. 2009) .................................. 8

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ...................................................... 1, 2

*Regents of the Univ. of Minn. v. AGA Med.*, 717 F.3d 929 (Fed. Cir. 2013) ........................... 5

*SciMed Life Sys., Inc. v. Adv. Cardiovascular Sys.,* Inc., 242 F.3d 1337 (Fed. Cir. 2001) ......... 5

*Teva Pharm. USA, Inc. v. Sandoz, In*c., 574 U.S. 318 (2015) ................................................ 1, 17

*U.S. Gypsum Co. v. Lafarge N. Am. Inc.*, No. 03 C 6027, 2009 WL 3720032 (N.D. Ill. Nov. 2, 2009) ...................................................................................................................... 3

*Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295 (Fed. Cir. 2007) .................... 5

**Statutes**

35 U.S.C. § 112 ............................................................................................................. 16, 19

**Other Authorities**

*Merriam-Webster.com Dictionary* .............................................................................. 11, 15

USPTO's MANUAL OF PATENT EXAM. PROC., § 2163.07(b) ...................................................... 6

**Rules**

Fed. R. Civ. P. 12(c) ..................................................................................................... 7, 13

iv

## I.    Background

J&M asserts Kinze infringes its United States Patent No. 9,113,598 ('598 Patent) related to the grain off-loading apparatus of grain carts. Kinze disputes infringement, validity and scope of the coverage afforded by the '598 Patent.

## II.    Purpose of Claims Construction

In *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, the Federal Circuit stated: "[w]hen the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." 521 F.3d 1351, 1362 (Fed. Cir. 2008). Otherwise, a legal question will be "improperly submitted to the jury." *Id.* "A proper claim construction provides a legal standard for the jury to apply…" *Kaufman v. Microsoft Corp.*, 34 F.4th 1360, 1370 (Fed. Cir. 2022).

Claim construction is, of course, ultimately a question of law that must be left to the court, not the jury. *Teva Pharm. USA, Inc. v. Sandoz, In*c., 574 U.S. 318 (2015).

## III.    Construction

Claim terms are generally given the ordinary meaning a person of ordinary skill in the art (POSA) would have understood them to have at the time of invention, when read in the context of the specification and prosecution history. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). Kinze contends that a POSA is a degreed engineer with experience related to mechanical technology or a person having 5-10 years of the experience in design/construction of grain carts.

"To find the meaning of the claims, either its 'ordinary and customary meaning' or patent-specific meaning, the court considers a hierarchy of evidence." *Microsource, LLC*

1

*v. Eco World Group, LLC*, 587 F. Supp. 3d 770, 796 (N.D. Iowa 2022) (citing *Phillips*, 415 F.3d at 1314.) The language of the claims, the prosecution history, and particularly the specification are the strongest evidence of the definition of a claim term. *Phillips*, 415 F.3d. at 1315. Extrinsic evidence, such as a dictionary definition, may be considered in addition to intrinsic evidence, but extrinsic evidence cannot be used "to contradict claim meaning that is unambiguous in light of the intrinsic evidence." *Phillips*, 415 F.3d at 1324.

Moreover, a claim must have a reasonably certain construction, rather than simply be "amendable to construction" to avoid indefiniteness. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910, (2014) (unanimously requiring claims viewed in light of the specification and prosecution history, inform a POSA of "the scope of the invention with reasonable certainty."). This tenet of construction is designed to prevent the patent owner, such as J&M, from injecting ambiguity into the patent claims.

Here, J&M adopts the position that the plain and ordinary meaning suffices to resolve the disputed construction between the parties. Kinze disagrees. It is apparent that J&M would ask this Court to adopt an approach that would allow it to elastically expand the coverage provided by the '598 Patent – an approach that is improper.

A. <u>Plain and Ordinary Meaning</u>

"A determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008); *see also Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1361 (Fed. Cir. 2017). When the parties fundamentally disagree on the definition of a term

claim "reliance upon the phrase 'plain and ordinary meaning,' or a determination that the claim terms require 'no construction,' would offer little in terms of facilitating a resolution of these related actions." *Baxter Healthcare Corp. v. Mylan Labs. Ltd.*, 346 F. Supp. 3d 643, 653 (D.N.J. 2016) ("Stated differently, a blanket resort to the 'ordinary' meaning of the disputed claim terms would leave unresolved the parties' disputes, and would largely negate the importance of the claims construction process—a phase of patent litigation specifically directed at determining claim scope in view of the patents-in-suit.").[1]

Further, claim term construction is helpful and necessary if a jury likely would not understand the alleged plain and ordinary meaning of a claim term. *See, Intell. Ventures I LLC v. Altera Corp.*, 2013 WL 3913646, at *5 (D. Del. July 26, 2013) (finding a construction of "plain and ordinary" unpersuasive because a jury would not understand the term "given the complexity and abstract nature of the technology"); *see also U.S. Gypsum Co. v. Lafarge N. Am. Inc.*, No. 03 C 6027, 2009 WL 3720032, at *7 (N.D. Ill. Nov. 2, 2009) (construing "conduit" because the term may be unfamiliar to a jury but adopting plain and ordinary meaning for "discharge" because a jury would naturally understand the term); *Mesh Comm, LLC v. PEPCO Energy Servs.*, 2010 WL 5463934, at *9 (D. Md. Dec. 29, 2010) (concluding that "although a lay jury may be able to understand a plain and ordinary meaning of the phrase 'associated with' in the context of a patent describing a

---

[1] While Kinze argues construction of the disputed terms as simply having the "plain and ordinary meaning" is insufficient for the reasons set forth herein, Kinze's proposed constructions comport with the plain and ordinary meaning of the terms as reflected by the cited intrinsic and extrinsic evidence.

method and apparatus for making telephone calls—something most jurors are undoubtedly familiar with—a construction of the phrase in the context of a patent describing a wireless communication enabled meter and network requires a construction beyond the plain and ordinary meaning."). *See also, Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1319-1320 (Fed. Cir. 2016) (disapproving instruction of the jury to utilize the plain and ordinary and rejecting a request for construction that would resolve the dispute of the parties).

### B. <u>Patent Claim Scope</u>

*Bicon, Inc. v. Straumann Co*., 441 F.3d 945, 951 (Fed. Cir. 2006) ("The purpose of a patent claim is to define the precise scope of a claimed invention, thereby ′giv[ing] notice both to the examiner at the U.S. Patent and Trademark Office during prosecution, and to the public at large, including potential competitors, after the patent has issued.′ *Johnson & Johnston Assocs., Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1052 (Fed. Cir. 2002) (*en banc*)"); *see also C.R. Bard, Inc. v. U.S. Surgical Corp*., 102 F. Supp. 2d. 199, 209, 215 (D. Del. 2000) (stating "Claims should be interpreted consistently with the specification, which provides content for the proper construction of the claims because it explains the nature of the patentee's invention"; and "claims should not be construed to encompass embodiments beyond those that are described and enabled in the specification.").

### C. <u>Present Invention – Limitation of Scope</u>

Further, within the body of the '598 Patent J&M purposefully limited the scope of its invention to specific types of grain carts by use of the phrase, "the present invention".

4

> **The present invention** is directed to a grain cart having a unloading auger conveyor with an upper section supported for folding movement between a retracted stored position adjacent the grain cart container and an extended operating discharge position projecting upwardly, forwardly and laterally outwardly from the left front corner of the container, as disclosed in the above-mentioned patents. (emphasis added) ('598 Patent, 1:61-67)

It is established patent law, consistent with the public notice function, that when a patent application describes an embodiment as "the present invention" that patent's scope is limited to the described embodiment. *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007) ("When a patent thus describes the features of the 'present invention' as a whole, this description limits the scope of the invention. *Honeywell Int'l, Inc. v. ITT Indus.*, 452 F.3d 1312, 1318–19 (Fed. Cir. 2006); *SciMed Life Sys., Inc. v. Adv. Cardiovascular Sys.*, Inc., 242 F.3d 1337, 1343 (Fed. Cir. 2001)."); *Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1330 (Fed. Cir. 2009) (holding a description of an embodiment of the invention in a patent as "the present invention" may operate to bar scope of coverage beyond that embodiment.); *see also Regents of the Univ. of Minn. v. AGA Med.*, 717 F.3d 929, 936 (Fed. Cir. 2013); *Genzyme v. Transkaryotic Therapies*, 346 F.3d 1094, 1099 (Fed. Cir. 2003). Further, in *O2 Micro*, the Federal Circuit has instructed that "[w]hen the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." 521 F.3d at 1362. Otherwise, a legal question will be "improperly submitted to the jury." *Id.*

### D. <u>Incorporation by Reference</u>

At its outset, the '598 Patent specifically incorporates by reference J&M grain cart patents, United States Patent Nos. 5,340,265, 6,296,435, 6,497,546, 7,134,830 and 8,047,757.

5

The impact of incorporation by reference is well understood in patent law. The patents incorporated are not divorced from the prosecution history underlying each. By incorporation by reference, each of these materials become a part of the intrinsic record related to the '598 Patent. *See, Finjan LLC v. ESET, LLC,* 51 F.4th 1377, 1382 (Fed. Cir. 2022) ("Patents that are incorporated by reference are 'effectively part of the host [patents] as if [they] were explicitly contained therein'… Accordingly, definitions in any incorporated patents or references are a part of the host patent." (citations omitted)); USPTO's MANUAL OF PATENT EXAM. PROC., § 2163.07(b) ("The information incorporated is as much a part of the application as filed as if the text was repeated in the application, and should be treated as part of the text of the application as filed."); *Fifth Generation Computer Corp. v. Int'l Bus. Mach. Corp.,* 416 Fed. Appx. 74, 2011 WL 229575 at *79-*80 (Fed. Cir., Jan. 26, 2011) ("We agree with Fifth Generation that the '024 patent specification does not need to expressly recite concepts disclosed in the earlier Stolfo patents in order to incorporate them into the later patent specification. The clear incorporation by reference suffices to serve that purpose here." (citation omitted)).

## IV. CLAIM TERMS IN DISPUTE

### A. FROM

| J&M | Kinze |
|---|---|
| This term requires no construction, and should be accorded its plain and ordinary meaning in view of the intrinsic record. | From - an origination point |
| Alternative definition: From - identifies a directional position | |

6

In Claim 1 of the '598 Patent, the term "from" is utilized in four (4) separate places, each of which is noted below:

A. "from a field" (4:28)　　　　　C. "from a front corner portion" (4:47)

B. "from said container" (4:41)　　　D. "from said housing" (4:52)

First, J&M adopts the position that no construction of "from" is needed, and that it should be understood to possess its "plain and ordinary meaning." This position would appear to ignore the direction of the District Court. Specifically, in denial of Kinze's FRCP 12(c) motion, this Court stated: "But here, the asserted limitations are not so plain and do require claim construction. The arguments here turn on the meaning of the claim terms "from" …" (ECF #47, p. 3). It would thus appear that the Court has already rejected J&M's position.[2]

As a second, alternative position, J&M posits a proposed definition: "the term 'from' identifies a directional position."

"From" is a preposition. "From" is used in Claim 1 in all four instances in a prepositional phrase. The object of the preposition in the four uses is "field", "container", "front corner portion", and "housing". Each of these is a point of origin, not a direction. Utilizing Fig. 1 of the '598 Patent, **A** is from the preamble and identifies the field under harvest (4:28); **B** is from the 4th element and identifies the container (4:41); **C** is from the

---

[2] It is also noteworthy that at the oral argument on the FRCP 12(c) motion, J&M advanced the position that the motion was premature and should be denied in that the terms at issue required claims construction. Accordingly, based upon J&M's presentation to the Court, it would appear that they have waived or are otherwise estopped from now asserting that plain and ordinary meaning applies to the term "from".

5th element and identifies the front corner portion (4:47); and **D** is from the 6th element and identifies the upper section of the auger housing (4:52).



In logical application of J&M's alternative definitional position as to the term "from", rhetorically speaking, is the direction "from a field" sideways, up, down, or at an angle as the term is used in the preamble of Claim 1?

The problem with J&M's position is that it requires "from" to have different meanings in the claims. There is a legal presumption that when the patentee uses a term more than once in the patent claim or claims, the meaning of the term is the same. "[W]e presume, unless otherwise compelled, that the same claim term in the same patent or related patents carries the same construed meaning." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003); *see also Paragon Solutions, LLC v. Timex Corp.*, 566 F.3d 1075, 1087 (Fed. Cir. 2009) ("We apply a presumption that the same terms appearing in different portions of the claims should be given the same meaning **unless it is clear** from the specification and prosecution history that the terms have different meanings at different portions of the claims.") (emphasis added).

Kinze's proposed construction defines "from" as a preposition identifying "an origin point." This definition is consistent with the use of "from" in all four instances in

8

Claim 1. It is further consistent with the intrinsic record of the '598 Patent as set forth below.

"[A] word describing patented technology takes its definition from the context in which it was used by the inventor." *Anderson v. Int'l Eng'g & Mfg., Inc.*, 160 F.3d 1345, 1348–49 (Fed. Cir. 1998). Here, the use of "from" in the '598 Patent discloses it identifies an originating physical location:

- "transporting grain **from** a harvesting combine in a field" (1:14-15);

- "the grain is discharged **from** the auger conveyor through a discharge spout" (1:38-39);

- "discharged **from** the unloading auger" (1:52);

- "controlled **from** the cab of the tow tractor" (3:25);

- "transferring grain **from** a field" (Claim 1, 4:28).

Additionally, the intrinsic disclosure of the '598 Patent unambiguously describes the invention construct below (emphasis added):

> The present invention is directed to a grain cart having a unloading auger conveyor with an upper section… **projecting … from the left front corner of the container, as disclosed in the above-mentioned patents**. (emphasis added). '598 Patent; 1:60-67.

First, as disclosed in the "above-mentioned patents" (which are incorporated by reference into and made a part of the '598 Patent), each discloses the upper section of the discharge auger as emerging from the left front corner of the grain cart container as exemplified in Fig. 1 above. Second, each drawing '598 Patent which discloses the grain cart container and relationship with the discharge auger shows the upper auger section emerging from

9

the left front corner of the grain cart container – no alternative embodiment is shown, nor stated within the specification or the prosecution history. *See, e.g.*, Figs. 1-6, '598 Patent.

Relevant to this review is the specific statement by the patentee in filing, prosecuting and obtaining the '598 Patent at 1:8-14: "The present invention relates to a grain wagon or grain cart having a [sic] unloading auger conveyor and of the type disclosed in U.S. Pat. Nos. … 7,134,830 … and the disclosures of which are herein incorporated by reference." As discussed at pp. 4-5 above, patentee's use of the "present invention" description operates to place a boundary upon the physical embodiment of the inventive grain cart. *See, e.g., Honeywell,* 452 at 1318 ("This invention relates to a fuel filter for use in the fuel line that delivers fuel to a motor vehicle engine. . . . According to the present invention, a fuel filter for a motor vehicle is made from a moldable material which may be safely used in vehicles equipped with electronic fuel injection system."'879 Patent, col.1 ll.8–9, 40–43…. "The public is entitled to take the patentee at his word and the word was that the invention is a fuel filter."). Specifically, the '830 Patent discloses the connection to the left front corner of the container, shown in Figs. 2 (front wall **37** highlighted in gold) and 3, and states: "The conveyor 105 includes a fixed lower portion or section **108**, which intersects the front wall **37**, and an upper portion or section **110** which are pivotally connected by a hinge 112 (FIG. 3)." ('830 Patent, 4:8-11 (emphasis added))



In addition to the intrinsic record, the preferred customary and ordinary definition of "from" according to the MERRIAM-WEBSTER dictionary means "used as a function word to indicate a starting point of a physical movement" *See* "From." *Merriam-Webster.com Dictionary*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/from.

### B. MOUNTED ON

| J&M | Kinze |
|---|---|
| This term requires no construction, and should be accorded its plain and ordinary meaning in view of the intrinsic record. | Mounted on - primary point of fixation |

The term "mount" appears once in the '598 Patent specification – "One attempt to fill more of the opposite corner portions of a rectangular semi-trailer with grain being discharged from the unloading auger was to **mount** the discharge spout on the conveyor housing so that the spout may be oscillated back and forth on the axis of the conveyor

11

auger." '598 Patent, 1:50-56. This use was to show the primary point of fixation as being on the conveyor housing.

The term "mounted" or "mounted on" only appears once in the claims – Claim 1. '598 Patent, 4:40, " . . . said lower section of said auger conveyor **mounted on** said container and positioned to receive grain from said container." Both uses conform to a primary point of fixation.

Additionally, in an Office Action dated April 1, 2015 during prosecution of the '598 patent, the USPTO cited Patent No. 6,497,546 ('546 Patent) (one of the patents incorporated by reference). The '546 Patent utilizes the term "mounted on" as noted below and shown by Fig. 4 (the shaft 48 (gold) on which the flight 46 (purple) is mounted):

> Each of the auger conveyor sections 38 and 42 includes a grain confining tubular conduit 44 which encloses a grain moving member or rotary helical screw or flight 46 (FIG. 4) **mounted on** a center shaft 48. The upper end portion of the shaft 48 is supported by a bearing 51 enclosed within a housing **mounted on** the upper end of the conduit 44, … ('546 Patent, 3:47-52).

Also, highlighted in green is the bearing housing which is shown as mounted on the top of the conduit. The intrinsic evidence makes it clear that "mounted" or "mounted on" means a primary point of fixation.



12

Historically, grain transport equipment employing an auger assembly have used the term "mounted" to mean primary point of fixation. For example, the 1946 patent, U.S. Patent No. 2,401,465, entitled *Grain Loading and Unloading Device*, informs a POSA that an auger, shown in Fig. 3 (right) as element 23, is mounted to the housing element 21 (highlighted within red circle) ("Each end of the housing 20 is formed with laterally extending cylindrical housings 21 and 22 in each of which a screw conveyor 23 is mounted." U.S. Patent No. 2,401,465, at 2:27-29).



### C. ADJACENT

| J&M | Kinze |
|---|---|
| This term requires no construction, and should be accorded its plain and ordinary meaning in view of the intrinsic record.[3] | Adjacent - positioned next to |
| Alternative definition: Adjacent - the relative position of the upper section of the folding auger of a corner auger cart when it is in its retracted stored position. | |

The use of "adjacent" in the '598 Patent discloses it means positioned next to:

---

[3] Kinze references note 1 *supra*, again, it would appear J&M has waived or is otherwise estopped from now asserting the plain and ordinary meaning applies to the term "adjacent" in light of J&M's positions taken in response to Kinze's Rule 12(c) motion.

Case 1:22-cv-00094-CJW-KEM   Document 52   Filed 05/30/23   Page 17 of 26

- "stored position **adjacent** the front wall of the container" (1:26-27);

- "**adjacent** the grain cart container" (1:64)

- "the discharge spout 86 and flow control spout 90 are positioned **adjacent** one end of the semi-trailer" (3:53-54)

The last example of adjacent (3:53-54) is when the '598 Patent describes the location of vertical discharge end of the auger through which grain is off-loaded into one end of the semi-trailer (3:46-65); this description specifically references Fig. 1 to graphically depict "adjacent" as highlighted by the red rectangle showing the physical proximity of the discharge end (86, 90) to the front of the semi-trailer.



Kinze's proposed construction is consistent with the use of the term in the patent itself, as well as, the common understanding of the meaning of the term in the English language. J&M's proposed construction does not serve well as a definition of adjacent as the proposal would render much of the claim language itself redundant.

14

## D.  A DISCHARGE SPOUT PROJECTING

| J&M | Kinze |
|---|---|
| This term requires no construction, and should be accorded its plain and ordinary meaning in view of the intrinsic record. | A discharge spout projecting - a conduit having a planar top and bottom surface, which protrude from said housing |

Claim 1 of the '598 Patent states, "[the upper section of the conveyor] . . . including a discharge spout projecting laterally at an askewed angle from said housing." ('598 Patent 4:49-53). Thus, the '598 Patent discloses a discharge spout which is askew relative to the axis of the upper discharge auger housing:

> In accordance with the present invention, the cylindrical housing 84 of the upper conveyor section 82 includes a fabricated sheet metal discharge spout 86 (FIG. 7) welded to the housing 84 in a position askewed relative to the axis of the housing 84 and has a horizontally extending rectangular discharge outlet 88 open to the inside of the housing 84 of the upper conveyor section. ('598 Patent, 3:26-32)

First, it is readily apparent from the '598 Patent disclosure that the spout has the purpose of carrying and directing the flow of grain – thus a conduit – passing from the grain cart container through the discharge auger and into an awaiting grain truck ('598 Patent, 1:36-39). Second, the '598 Patent establishes a relationship between the geometry of the spout and the geometry of the auger housing.

In order to determine whether something is "askewed" a geometric analysis is required. Askew is defined and would be understood to a POSA[4] to be "out of line; at an angle". *See* "Askew." *Merriam-Webster.com Dictionary*, MERRIAM-WEBSTER,

---

[4] Kinze maintains the term "askewed" is indefinite as set forth in Part V below.

https://www.merriam-webster.com/dictionary/askew.

Thus, for the axis of the discharge auger housing to be at an angle, a linear or planar structure is required, as being askewed describes the geometric or angular relationship between two component parts. In the case of the '598 Patent, the comparative structure to the "axis of the housing" is the "discharge spout 86" ('598 Patent, 3:26-32). This relationship is demonstrated by reference to Fig. 7 wherein the top and bottom surfaces are highlighted in gold and show the relationship of the planar surface necessary to create an askewed angle vis-à-vis the discharge spout. *See, e.g., Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1348 (Fed. Cir. 2012) (figures in an asserted patent can inform a person of ordinary skill in the art as to the meaning of disputed claim terms).

As further discussed below, "askewed" is a vague term of degree under patent law. An example is J&M's '757 Patent ('757 Patent, 3:54-59 – "askewed at an acute angle relative to reference planes"). Critically, this description identifies the need for reference planes to ascertain the angular relationship so as to reach the conclusion that a particular component of the grain cart is "askewed." While Kinze maintains (*see* Part V) the term "askewed" is indefinite, should the Court find otherwise, Kinze's proposed definition properly accords meaning to the need for reference planes and should be adopted.

## V.    INDEFINITENESS ANALYSIS

| J&M | Kinze |
|---|---|
| Not indefinite. The term "askewed" requires no construction, and should be accorded its plain and ordinary meaning in view of the intrinsic record. | The word "askewed" is indefinite and its use renders this clause indefinite. |

16

J&M's use of "askewed" is indefinite as a matter of law and this Court has authority to find it indefinite based on its usage in the '598 Patent. The Federal Circuit has recognized the propriety of rendering patent claims as invalid as a part of the Markman process. *See Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1377-78 (Fed. Cir. 2014) (upholding judgment of invalidity due to indefiniteness made during claim construction). J&M's use of "askewed" in the '598 Patent is indefinite and contrary to the provisions of 35 U.S.C. § 112. As noted by SCOTUS in *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014), "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."

J&M uses the term "askewed" three times in the claims of the '598 Patent:

- "a discharge spout projecting laterally at an *askewed* angle from said housing" (claim 1, 4:51-52)

- "said discharge spout supporting a flow control spout for tilting movement on a substantially horizontal axis *askewed* with respect to an axis of said auger within said upper section" (claim 1, 4:53-56)

- "projects at said *askewed* angle from said housing" (claim 2, 5:6-7)

At face value, each of the claim clauses above, are indefinite as written due to J&Ms failure to define what "askewed" means. The concept of being "askewed" has no inherent meaning without specific context and J&M's patent fails to provide said necessary context. Even if a dictionary definition is adopted, the term still fails to provide public

17

notice of the metes and bounds of the claims because the specification fails to provide clarity as among the multiple ways alignment and/or degree may be determined.

In *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1341 (Fed. Cir. 2015), the Federal Circuit determined that the claim term, "molecular weight" rendered the claim as indefinite as the term was open to multiple reasonable interpretations – there were three differing ways to calculate molecular weight each with a differing outcome. In so doing, the Court rejected the argument by the patent holder that to "a skilled artisan, 'average molecular weight' has a presumed meaning" further bolstered and understood by the patent specification. *See also In re Neurografix Patent Litig.*, 201 F. Supp. 3d 206, 223 (D. Mass. 2016) (concluding that the term "near," in context, was indefinite, as it encompassed a myriad of possible configurations); *Ingevity Corp. v. BASF Corp.*, 2019 WL 2356978 at *4 (D. Del., June 4, 2019) (denying preliminary injunction to Plaintiff finding the patent claim term "incremental adsorption capacity" presented a substantial issue of invalidation as indefinite); *Honeywell Int'l, Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1341 (Fed. Cir. 2003) (finding the term "melting point elevation" was indefinite because many methods could be used to prepare a sample of the material in question to test its melting point elevation.); *Pacific Coast Building Prods., Inc. v. Certainteed Gypsum, Inc.* 2018 WL 6268880 at *13 (N.D. Cal., Nov. 29, 2018) (holding that while industry standard existed for determining flexural strength, the claim term "scored flexural strength" was indefinite as "the specification never discloses how to measure scored flexural strength."); *Halliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244, 1253 (Fed. Cir. 2008) (finding the term "fragile gel" indefinite for "failing to identify the degree of the fragility

of its invention, Halliburton's proposed definition would allow the claims to cover not only that which it invented that was superior to the prior art, but also all future improvements to the gel's fragility").

As used in the '598 Patent, "askewed" is a term of degree based upon a geometric relationship between the axis of the housing of the discharge auger and the discharge spout. Use of a term of degree enhances the concern that the patent claims fail to inform the public as to what is covered by the patent and what is open for use by the public. For example, the Federal Circuit stated in the case of *Liberty Ammunition, Inc. v. United State*s, 835 F.3d 1388, 1395-96 (Fed. Cir. 2016):

> We begin our analysis by recognizing that the term "reduced area of contact" is one of degree, as it necessarily calls for a comparison against some baseline. Terms of degree are problematic if their baseline is unclear to those of ordinary skill in the art. We especially take caution when presented with terms of degree following the Supreme Court's decision in *Nautilus, Inc. v. Biosig Instruments, Inc.*, ––– U.S. ––––, 134 S. Ct. 2120, 189 L.Ed.2d 37 (2014), which instructs that a claim must "inform those skilled in the art about the scope of the invention with reasonable certainty" to meet the definiteness requirement of 35 U.S.C. § 112, ¶ 2, id. at 2129. While our post-Nautilus cases indicate that terms of degree are not "inherently indefinite" in light of the Supreme Court's decision, **we have recognized that claims having terms of degree will fail for indefiniteness unless they "provide objective boundaries for those of skill in the art" when read in light of the specification and the prosecution history**. *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370–71 (Fed. Cir. 2014), cert. denied, ––– U.S. ––––, 136 S. Ct. 59, 193 L.Ed.2d 207 (2015) (emphasis added).

Here, J&M fails to provide any objective boundary for understanding what angle constitutes an askewed angle and what does not. For example, is the spout askewed if it is positioned at an 88° angle or a 77° angle or a 105° angle from the comparative linear axis point? Is anything aside from the auger axis askewed, e.g., 90° or 2° offset from the

19

auger axis? Is askewed merely determined by the eye of the beholder? This is the problem with indefiniteness.

The '598 Patent does not define askewed and the term is only referenced twice in the specification – at 2:2 and 3:29. Both of the references in the specification relate to the purported askewed relationship between the discharge spout and the axis of the auger housing. No mention is made anywhere in the specification of the askewed relation between the horizontal tilting axis of the flow control spout and the axis of the auger as set forth in claim 1 (col. 4, line 55). Even though J&M articulates some level of information as to a meaning for askewed at an acute angle of about 14° from a planar surface in its '757 Patent at 3:54-59 as discussed above, does this define the smallest angle of deviation so that any out of alignment of 13.9° to 0.1° represents a nonaskewed misalignment?

Much like *Halliburton Energy* here J&M has utilized a term of degree without "'provid[ing] objective boundaries for those of skill in the art' when read in light of the specification and the prosecution history." Because of this failure, the Court should fine the '598 Patent is indefinite as a matter of law.

## VI. CONCLUSION

Thus, Kinze contends it is proper for the Court to find the term "askewed" indefinite and to adopt Kinze's proposed constructions of the remaining disputed terms.

///

///

///

///

///

///

Dated: May 30, 2023                    Respectfully submitted,


                                       /s/Glenn Johnson_____
                                       **McKEE, VOORHEES & SEASE, P.L.C.**
                                       Glenn Johnson (AT0003856)
                                       Jonathan Kennedy (AT0011458)
                                       801 Grand Avenue, Suite 3200
                                       Des Moines, IA 50309-2721
                                       Telephone: 515-288-3667
                                       Facsimile: 515-288-1338
                                       Email: Glenn.Johnson@ipmvs.com
                                       Email: Jonathan.Kennedy@ipmvs.com
                                       Email: mvslit@ipmvs.com

                                       *ATTORNEYS FOR KINZE*
                                       *MANUFACTURING, INC., DEFENDANT*

21

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2023, I filed the foregoing with the Clerk of Court using the ECF system which will send notification of such filing to the following:

Copy To:

Thomas D Wolle
Simmons Perrine Moyer Bergman PLC
115 3rd St SE, Suite 1200
Cedar Rapids, IA 52401
Phone: (319) 366-7641
Email: twolle@spmblaw.com

*Attorneys for Plaintiff*

Kevin Gerard Rooney
Rooney IP LLC
8044 Montgomery Road, Suite 410
Cincinnati, OH 45236
Phone: (513) 470 8541
Email: krooney@rooneyiplaw.com

*Attorneys for Plaintiff*

Wilbert B Markovits
Jonathan T. Deters
Markovits Stock & DeMarco LLC
119 East Court Street, Suite 530
Cincinnati, OH 45202
Phone: (513) 651-3700
Email: bmarkovits@msdlegal.com
Email: jdeters@msdlegal.com

*Attorneys for Plaintiff*

Shawn Blackburn
Justin Nelson
Meng Xi
Susman Godfrey L.L.P.
1000 Louisiana, Suite 5100
Houston, TX 77002-5096
Phone: 713-651-9366
Email: SBlackburn@susmangodfrey.com
Email: JNelson@susmangodfrey.com
Email: MXi@susmangodfrey.com

*Attorneys for Plaintiff*

/s/Glenn Johnson

22