IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| J&M MANUFACTURING CO., INC., | Case No. 1:22-cv-94-CJW-KEM |
| | Judge CJ Williams |
| Plaintiff, | Magistrate Judge Kelly K.E. Mahoney |
| v. | |
| KINZE MANUFACTURING, INC., | **J&M'S OPENING *MARKMAN* BRIEF** |
| Defendant. | |

**TABLE OF CONTENTS**

Page

I.    Introduction ........................................................................................................ 1

II.   Background of the Patent ................................................................................. 1

III.  Legal Principles of Claim Construction ........................................................ 2

IV.   Disputed Terms ................................................................................................. 3

      a.    "from" ..................................................................................................... 3

      b.    "mounted on" ........................................................................................ 7

      c.    "adjacent" ............................................................................................... 9

      d.    "a discharge spout projecting" ......................................................... 11

      e.    "askewed" .............................................................................................. 13

V.    Conclusion ....................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.,*
    512 F.3d 1338 (Fed. Cir. 2008)..................................................................13

*BASF Corp. v. Johnson Matthew Inc.,*
    875 F.3d 1360 (Fed. Cir. 2017)..................................................................17

*Becton, Dickinson and Co. v. Tyco Healthcare Group,*
    616 F.3d 1249 (Fed. Cir. 2010)....................................................................6

*Biosig Instruments, Inc. v. Nautilus, Inc.,*
    783 F.3d 1374 (Fed. Cir. 2015)..................................................................17

*C. R. Bard, Inc. v. U.S. Surgical Corp.,*
    388 F.3d 858 (Fed. Cir. 2004) .....................................................................6

*CCS Fitness, Inc. v. Brunswick Corp.,*
    288 F.3d 1359 (Fed. Cir. 2002).....................................................................2

*ClearOne, Inc. v. Shure Acquisition Holdings, Inc.,*
    35 F.4th 1345 (Fed. Cir. 2022) ..................................................................19

*Comcast Cable Commc'ns, LLC v. Sprint Commc'ns Co.,*
    38 F. Supp. 3d 589 (E.D. Pa. 2014) .....................................................11, 13

*Credle v. Bond,*
    25 F.3d 1566 (Fed. Cir. 1994)..................................................................6, 9

*Enzo Biochem, Inc. v. Applera Corp.,*
    599 F.3d 1325 (Fed. Cir. 2010)..................................................................18

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.,*
    796 F.3d 1312 (Fed. Cir. 2015)..................................................................14

*Interactive Gift Exp. Inc. v. Compuserve Inc.,*
    256 F.3d 1323 (Fed. Cir. 2001).....................................................................3

*Lexington Luminance LLC v. Amazon Digital Servs., No. 12-cv-12216-DKC,*
    2016 U.S. Dist. LEXIS 46023 (D. Mass. Apr. 4, 2016) ...........................11, 12, 13

*Merck & Co. v. Teva Pharms. USA, Inc.,*
    347 F.3d 1367 (Fed. Cir. 2003).....................................................................2

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    134 S. Ct. 2120 (2014) ............................................................................................17

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (Fed. Cir. 2008) ..........................................................................5, 9

*On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*,
    386 F.3d 1133 (Fed. Cir. 2004) .................................................................................4

*Parity Networks, LLC v. Zyxel Commc'ns, Inc.*, No. SACV 20-697-JVS-KESx,
    2020 WL 8569299 (C.D. Cal. Dec. 22, 2020) ..........................................6, 7, 13

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) .................................................................................2

*Renishaw PLC v. Marposs Societa'*
    *per Azioni*, 158 F.3d 1243 (Fed. Cir. 1998) ...........................................................2

*Sonix Tech. Co., Ltd. v. Publ'ns Int'l, Ltd.*,
    844 F.3d 1370 (Fed. Cir. 2017) ..............................................................................18

*Sulzer Textil A.G. v. Picanol N.V.*,
    358 F.3d 1356 (Fed. Cir. 2004) .................................................................................9

*Summit 6, LLC v. Samsung Elecs. Co.*,
    802 F.3d 1283 (Fed. Cir. 2015) ..........................................................................5, 9

*Teleflex, Inc. v. Ficosa N. Am.*,
    299 F.3d 1313 (Fed. Cir. 2002) .................................................................................2

*U.S. Surgical Corp. v. Ethicon, Inc.*,
    103 F.3d 1554 (Fed. Cir. 1997) ..........................................................................5, 9

*Williamson v. Google, Inc.*,
    2017 WL 3232582 (N.D. Cal. July 27, 2017) ......................................................17

**Statutes**

35 U.S.C. § 112 ...........................................................................................................14

# I.     Introduction

Plaintiff J&M Manufacturing Co., Inc. ("J&M") presents this opening claim construction brief relating to the claim terms in dispute between the parties. There are 5 disputed claim terms from U.S. Patent No. 9,113,598 (the "'598 Patent") before the Court: "from," "mounted on," "adjacent," "a discharge spout projecting," and "askewed." J&M's position on claim construction is faithful to the '598 Patent and its specification, which provide ample guidance as to the plain meaning of the terms. Defendant Kinze Manufacturing, Inc. ("Kinze"), on the other hand, has proposed unsupported constructions that conflict with the plain claim language, exclude disclosed embodiments, and import extraneous limitations from the specification. Accordingly, J&M requests the Court adopt J&M's proposed constructions for all of the disputed terms.

# II.    Background of the Patent

The '598 Patent is entitled "Grain Cart Having an Inclined Folding Unloading Auger Conveyor with an Askewed Flow Control Spout." The '598 Patent addresses a problem unique to grain carts with corner augers: an uneven discharge of grain into the typical rectangular trailer. Exhibit 1 ('598 Patent), 1:40-50. This is due to the angled direction of the upper end of the folding vertical corner auger when in the discharge position. *Id.* at 1:36-40.

Corner auger grain carts, pulled by a tractor, generally transport grain received from a harvesting combine to an open top semi-trailer that then transports the grain to a grain elevator for drying and storage. *Id.* at 1:13-16. Prior to the '598 Patent, corner auger grain carts would unload grain through a discharge spout which was aligned with the axis of the upper auger conveyor. *Id.* at 1:36-40. As a result of the orientation of the discharge spout, grain would not be able to completely fill all four corners of the semi-trailer that it was being discharged into. *Id.* at 1:40-45. To remedy this deficiency, an individual would have to climb into the semi-trailer or onto a wall of the semi-trailer and manually pull or move the grain into the unfilled corners of the trailer. *Id.*

If the grain was not manually moved into the unfilled corners, the semi-trailer would deliver a partial load of grain, increasing the number of trips and the cost of transport. *Id.* at 1:45-50.

The '598 Patent addressed this problem by mounting the discharge spout to the upper end of the auger conveyor at an askewed angle. *Id.* at Abstract, 1:67-2:4, 2:7-15, 3:26-32. "Askewed" means that the outlet of the discharge spout is out of line relative to the axis of the upper end of the auger conveyor and directed laterally outwardly in a substantially vertical plane perpendicular to the side wall of the container of the grain cart. *See id.* at 3:26-37, 1:67-2:4. Additionally, a flow control spout is supported by the discharge spout for tilting movement on a substantially horizontal axis extending substantially parallel to the left side wall of the container of the grain cart. *Id.* at 2:4-7. By design, J&M's askewed discharge spout enables all four corner portions of a trailer to be filled and the trailer to be topped off evenly. *Id.* at 2:8-14, 3:51-65, 3:66-4:16.

## III. Legal Principles of Claim Construction

Claim construction is the consideration of the words of the claims. *Teleflex, Inc. v. Ficosa N. Am.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002), and "begins and ends in all cases with the actual words of the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). Generally, Courts "indulge a heavy presumption that a claim term carries its ordinary and customary meaning." *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002). The ordinary and customary meaning is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.*, as of the effective filing date of the patent application." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005). "Claims must be construed so as to be consistent with the specification, of which they are a part." *Merck & Co. v. Teva Pharms. USA, Inc.*, 347 F.3d 1367, 1371 (Fed. Cir. 2003). But where the claim language is clear, the specification "is restricted to determining if a deviation from the clear

language of the claims is specified." *Interactive Gift Exp. Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001).

## IV. Disputed Terms

### a. "from"

| J&M's Construction | Kinze's Construction |
|---|---|
| No construction required; plain and ordinary meaning. In the alternative, "from" identifies a directional position. | "an origination point" |

There is nothing tricky or unclear about the word "from" and J&M is not seeking to stray from the plain and ordinary meaning of this term. The full claim limitation reads:

> said upper section of said auger conveyor supported for folding movement between a retracted store position adjacent said container and an extended operating discharge position inclined upwardly and forwardly and laterally outwardly *from* a front corner portion of said container . . .

'598 Patent, 4:43-48. The claim language makes clear that the term "from" is used to signify that an "upper section of said auger conveyor… [is] inclined upwardly and forwardly and laterally outwardly *from* a front corner portion of [the] container" when in the "operating discharge position," to be contrasted with its "fold[ed]" "retracted stored position adjacent said container." *Id.* at 4:44-47.

Kinze seeks to construe the term "from" to indicate that what comes after the term is "an origination point"—a structure to which the upper section of the auger conveyor is attached. In practice, Kinze is attempting to fix or connect the "upper section of [the] auger conveyor" to a point at "a front corner portion of [the] container," so that it can avoid infringement by distinguishing its grain carts which ostensibly do not have the "upper section of [the] auger conveyor" "originat[e]" from that "point." This self-serving construction fails for at least four reasons.

***First***, Kinze's construction excludes an embodiment described in the specification that "the

3

fixed lower auger conveyor section is pivotally connected to the upper auger conveyor section by a hinge structure which provides for folding the upper conveyor section." *Id.* at 3:9-13. In other words, because the lower section of the auger conveyor is connected to the upper section, it would be impossible for the upper section to physically ***originate at*** a fixed ***point*** at the front corner portion of the container.[1] The upper section of the auger conveyor is connected to something other than a front corner portion of the container—in this embodiment, the lower section of the auger conveyor—so that the upper section may be folded adjacent the front wall of the container (in a stored position) or it may project in an incline upwardly-forwardly-and-laterally-outwardly relative to the left front corner of the container (in a discharge position). *Id.* at 3:12-15. The Court should reject Kinze's construction on this basis alone. *On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133, 1138 (Fed. Cir. 2004) ("[A] claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct.").



Video still from Plaintiff's Technology Tutorial depicting upper section folded in stored position adjacent the front wall of the container ('598 Patent, 3:12-14)



Video still from Plaintiff's Technology Tutorial depicting upper section in an inclined discharge position projecting upwardly, forwardly and laterally outwardly from the left front corner portion of the container ('598 Patent, 3:14-16)

---

[1] To the extent Kinze is arguing that the "upper section of said auger conveyor" while in an extended operating discharge position is "inclined . . . from" a front corner portion of the container, J&M does not contend that the recited ***inclination*** cannot "originate" from the front corner portion. However, J&M maintains that the plain and ordinary meaning of the term "from" sufficiently identifies the directional position of the upper section of the auger conveyor without delving into the unnecessary question of whether the structure itself must physically originate from—and therefore attach to—the container.

4

**Second**, "from" is a common term and does not require a construction. The Federal Circuit recognized this principle in *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co*., 521 F.3d 1351, 1362 (Fed. Cir. 2008), acknowledging that "district courts are not (and should not be) required to construe every limitation." *U.S. Surgical Corp. v. Ethicon, Inc*., 103 F.3d 1554, 1568 (Fed. Cir. 1997) (Claim construction "is not an obligatory exercise in redundancy."). Rather, "[c]laim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what is covered by the claims, for use in the determination of infringement." *Id.* In keeping with another district court's decision not to construe "[b]eing provided to," this Court should decline to construe "from" because of its usage "in common parlance and [its having] no special meaning in the art." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015).

**Third**, substituting "an origination point" into claim 1 renders affected limitations nonsensical and yields grammatically incorrect results:

| Original Claim Language | Claim Language With Kinze's Construction |
|---|---|
| said upper section of said auger conveyor supported for folding movement between a retracted store position adjacent said container and an extended operating discharge position inclined upwardly and forwardly and laterally outwardly ***from*** a front corner portion of said container | said upper section of said auger conveyor supported for folding movement between a retracted store position adjacent said container and an extended operating discharge position inclined upwardly and forwardly and laterally outwardly ***an origination point*** a front corner portion of said container |
| said housing of said upper section of said auger conveyor in said discharge position inclined upwardly and forwardly and laterally outwardly including a discharge spout projecting laterally at an askewed angle ***from*** said housing | said housing of said upper section of said auger conveyor in said discharge position inclined upwardly and forwardly and laterally outwardly including a discharge spout projecting laterally at an askewed angle ***an origination point*** said housing |

Therefore, Kinze's proposed construction should be rejected for the additional reason that it is "at war with [the] grammar and syntax [of the claim language] and … force[s] an unreasonable

5

interpretation." *Credle v. Bond*, 25 F.3d 1566, 1572 (Fed. Cir. 1994); *Becton, Dickinson and Co. v. Tyco Healthcare Group*, 616 F.3d 1249, 1255 (Fed. Cir. 2010) ("A claim construction that renders asserted claims facially nonsensical 'cannot be correct.'"). What's more, the concepts of an "origination point," an "origin" or a "source" are wholly absent from the '598 Patent, the specification of which makes no mention of these words. Failing any articulation by Kinze for why a common English term must be defined with respect to what follows it, using language and concepts that are not utilized in the specification, the Court should reject its proposed construction.

*Fourth*, insofar as Kinze's "origination point" construction is meant to refer to the general location *from* which the upper section of the auger conveyor projects or extends without requiring it to be connected to or fixed at that point, then J&M submits that the term "from," by itself, sufficiently captures the intended meaning. Courts have made clear that substitution of one term for another does little more than replace the inventor's chosen word with a synonym which does nothing to clarify the scope of the asserted claims. *See, e.g., Parity Networks, LLC v. Zyxel Commc'ns, Inc.*, No. SACV 20-697-JVS-KESx, 2020 WL 8569299, at *13 (C.D. Cal. Dec. 22, 2020) (rejecting construction that swapped the word "function" with "calculation" because "[m]erely rephrasing or paraphrasing the plain language of a claim by substituting synonyms does not represent genuine claim construction" and "[u]sing the word 'calculation' would not significantly aide the jury in understanding the scope of the claim") (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 863 (Fed. Cir. 2004)). Under those circumstances, no construction is necessary.

Accordingly, because "from" is not used in any special way divorced from its meaning in common parlance, because Kinze's construction would read out a disclosed embodiment from claim 1, and because Kinze fails to establish that what follows "from" must be an origination point

6

to which the upper section of an auger conveyor is connected, the Court should find that "from" requires no construction apart from its plain and ordinary meaning in the English language.

### b. "mounted on"

| J&M's Construction | Kinze's Construction |
|---|---|
| No construction required; plain and ordinary meaning. | "primary point of fixation" |

Like the word "from," "mounted on" is a common English phrase meaning "attached onto" and does not require construction. By contrast, Kinze's proposed construction has no intrinsic support, and introduces ambiguities which would confuse the jury.

The claim limitation that uses this term requires that the "lower section of said auger conveyor [to be] *mounted on* said container and positioned to receive grain from said container." '598 Patent, 4:40-43. Illustrated in a diagrammatic plan view below in Figure 1, the lower conveyor section 72 of auger conveyor 70 is located, at least partially, inside container 40, where there is grain. *Id.* at 3:1-6. This positioning of the lower conveyor section 72 partially inside container 40 is in contrast with the upper auger conveyor section 82, which "project[s] upwardly, forwardly and laterally outwardly from . . . container 40" when in "an inclined discharge position." *Id.* at 3:14-16.



FIG. I

Figure 1 does not require that the lower section 72 of the auger conveyor 70 must have container 40 as its "primary point of fixation" as Kinze proposes—whatever "primary" even means, or if

7

that entails there being "secondary points" to which the lower section may also be fixed.  At most, Figure 1 shows some type of attachment or connection between the lower auger conveyor section and the container of the grain cart.  Elsewhere in the specification, the usage of the term "to mount" within the phrase "to mount the discharge spout on the conveyor housing" is consistent with this plain and ordinary meaning of "mounted on." '598 Patent, 1:50-57.

The '598 Patent's usage of "mounted on" in its plain and ordinary sense is further supported by dictionary evidence. Specifically, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2005) defines the term "mount" to mean "to attach to a support." Exhibit 2.  Similarly, "mount" is defined as to "place or fix (an object) on an elevated support" by the CONCISE OXFORD AMERICAN DICTIONARY (2006), in the sense that "fluorescent lights are mounted on the ceiling." Exhibit 3. Neither definition describes anything even approximating Kinze's construction, which requires that an object that is "mounted on" a structure be connected to that structure through a "primary point of fixation." Instead, both definitions describe "mounting" as "attaching" or placing a thing on something else.

Kinze cannot identify any support within the specification that defines "mounted on" in the manner it has proposed. Nor would Kinze's construction aid the jury because it introduces confusing new terms such as "primary point," which can only engender additional questions such as "what is a primary point of fixation?" and "are there secondary points of fixation?"  Rife with ambiguity and lacking in value, Kinze's construction should be rejected in favor of the plain and ordinary meaning of the term "mounted on." *Cf. Sulzer Textil A.G. v. Picanol N.V*., 358 F.3d 1356 (Fed. Cir. 2004) (purpose of claim construction is to provide the jury with clear guidance).

In addition, if the Court were to adopt Kinze's construction, claim 1 of the '598 Patent would read, in relevant part, as follows: "said lower section of said auger conveyor ***primary point***

8

*of fixation* said container and positioned to receive grain from said container." This non-sensical and grammatically incorrect result goes against the Federal Circuit's principle of rejecting constructions that are "at war with . . . grammar and syntax and… force an unreasonable interpretation." *Credle*, 25 F.3d at 1572.

In keeping with the spirit of *O2 Micro*, *U.S. Surgical*, and *Summit 6*, the Court should decline to construe the commonly used and plainly understood phrase, "mounted on."

### c. "adjacent"

| J&M's Construction | Kinze's Construction |
|---|---|
| No construction required; plain and ordinary meaning. | "positioned next to" |

The parties are not far apart here. "Adjacent" has a plain and ordinary meaning in the English language, and that is "next to." *See* Exhibit 4 (CONCISE OXFORD AMERICAN DICTIONARY (2006)) (*adjacent*: next to or adjoining something else); Exhibit 5 (AMERICAN HERITAGE COLLEGE DICTIONARY (4th ed. 2007)) (*adjacent*: next to; adjoining). Indeed, any person who has consulted a real estate listing knows what "adjacent" means. Kinze's construction, "positioned next to," unnecessarily complicates a simple concept.

The term "adjacent" is used in claim 1 to describe that the "upper section of said auger conveyor [is] supported for folding movement between a retracted stored position *adjacent* said container…." '598 Patent, 4:43-45; *see also id.* at 1:61-64. The plain language of the claim makes clear that when it is in "a retracted stored position," the "upper section" of an auger conveyor is next to the container. The patent's specification further describes, in one embodiment, precisely *where* in relation to the container the upper auger conveyor section folds when in a stored position: "folding the upper conveyor section 82 [in] a stored position *adjacent the front wall 46* of the container 40." *Id.* at 3:12-14.



Video still from Plaintiff's Technology Tutorial depicting "folding the upper conveyor section 82 [in] a stored position adjacent the front wall 46 of the container 40." '598 Patent, 3:12-14.

Elsewhere in the specification, the term "adjacent" is consistently utilized to describe structures located next to each other: as shown in Figures 1 and 2 below, "the discharge spout 86 and flow control spout 90 are positioned ***adjacent*** one end of the semi-trailer [100]." *Id.* at 3:53-54.



Kinze's construction proposes adding "positioned" to the definition of the term "adjacent." It is unclear what the extra word—"positioned"—accomplishes, and Kinze has neither pointed to intrinsic nor extrinsic support for its construction. Similar to the previous term "mounted on," Kinze's construction injects unnecessary ambiguity into the claim: how does "positioned" next to differ from being next to? Does "positioned" mean that one structure must or must not touch another structure? The Court should not construct the term in the manner Kinze has proposed, so as to avoid needlessly confusing the jury. *See Lexington Luminance LLC v. Amazon Digital Servs.*, No. 12-cv-12216-DKC, 2016 U.S. Dist. LEXIS 46023, at *38 (D. Mass. Apr. 4, 2016) (adopting

10

plaintiff's construction because defendants' construction "includes a series of details . . . that are likely to needlessly confuse the jury"); *Comcast Cable Commc'ns, LLC v. Sprint Commc'ns Co.*, 38 F. Supp. 3d 589, 621 (E.D. Pa. 2014) (rejecting defendant's construction because "it includes detail that will needlessly confuse the jury without meaningfully impacting the questions of infringement and invalidity.").

The Court should therefore reject Kinze's construction and accord "adjacent" its plain and ordinary meaning of "next to."

### d. "a discharge spout projecting"

| J&M's Construction | Kinze's Construction |
|---|---|
| No construction required; plain and ordinary meaning. | "a conduit having a planar top and bottom surface, which protrude from said housing" |

The disputed term "a discharge spout projecting" has a clear meaning that is apparent from the claims and the text of the '598 Patent. Kinze's construction, on the other hand, adds unnecessary detail in an attempt to reach a narrow construction that excludes the accused grain cart. No construction of this term is necessary, and nothing supports importing additional limitations to this claim term.

To start, the phrase "a discharge spout projecting" can be broken into two parts for purposes of construction: the noun "a discharge spout" and the adjective "projecting."

With respect to "a discharge spout," claim 1 requires it to be "projecting . . . from said housing." '598 Patent, 4:49-52. The '598 Patent describes the function of the "discharge spout" as discharging grain from the auger conveyor into a semi-trailer: "[w]hen the grain is unloaded and discharged into an open top rectangular semi-trailer for delivery to a grain elevator, the grain is discharged from the auger conveyor through *a discharge spout*…" *Id.* at 1:36-39. The specification also describes the structure and placement of the "discharge spout" as "an outlet which is directed laterally outwardly in a substantially vertical plane to the left side wall of the container." *Id.* at 2:2-

11

4. Based on the claim language and these portions of the specification, the "discharge spout" clearly refers to an outlet that projects from a housing of an auger conveyor for discharging grain.

Nothing in the patent specifies whether the discharge spout or "outlet" constitutes a "conduit," as Kinze proposes, nor whether or how many "planar surfaces" it must have, which Kinze proposes to include in its construction. Indeed, exemplary Figure 7 from the patent shows "a fabricated sheet metal discharge spout 86 . . . welded to the housing 84" with what appears to be several sides or edges, and it is unclear which two sides or edges would form the "planar top and bottom surface" Kinze had in mind for its construction. *See id.* at FIG. 7, 3:24-32. To the extent Kinze argues that Figure 7's illustration of a discharge spout having several sides or edges supports a construction requiring "planar surfaces," Figure 7 is but one exemplary embodiment of a discharge spout and nothing in the patent precludes a circular discharge spout without sides or edges. *Id.* at 4:20-25 (while what's described and shown "constitutes a preferred embodiment of the invention, it is to be understood that the invention is not limited to this precise form"). Therefore, the details illustrated by exemplary Figure 7 cannot be imported as additional limitations when they are not present in the claims. *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1345 (Fed. Cir. 2008) ("In examining the specification for proper context, however, this court will not at any time import limitations from the specification into the claims.")



FIG. 7

12

Because "a discharge spout" has a clear meaning within claim 1 and when read in the context of the specification, a construction—particularly one that introduces new terms such as "conduit" and extraneous details such as "planar top and bottom surface[s]"—is not necessary, but rather unhelpful and confusing. *See Lexington Luminance*, 2016 U.S. Dist. LEXIS 46023, at *38 (rejecting construction that "includes a series of details . . . that are likely to needlessly confuse the jury"); *Comcast Cable*, 38 F. Supp. 3d at 621 (same).

With respect to the second portion of the term, "projecting," no construction is necessary because the claim itself clearly states that the "discharge spout [is] ***projecting*** laterally at an askewed angle ***from said housing***." '598 Patent, 4:51-52. Kinze's proposed construction of "which protrude from said housing" is at best redundant; at its worst, the word "protrude" does not appear anywhere in the patent and "[m]erely rephrasing or paraphrasing the plain language of a claim by substituting synonyms does not represent genuine claim construction." *Parity Networks*, 2020 WL 8569299, at *13 (declining to construe the term "function" to mean "calculation").

Accordingly, J&M requests that the Court adopt the plain and ordinary meaning of the term "a discharge spout projecting."

e.   **"askewed"**

| J&M's Construction | Kinze's Construction |
|---|---|
| Not indefinite; no construction required; plain and ordinary meaning. | Indefinite. |

The term "askewed" appears in three limitations in claims 1 and 2 of the '598 Patent: "a discharge spout projecting laterally at an *askewed* angle from said housing" in claim 1, "said discharge spout supporting a flow control spout for tilting movement on a substantially horizontal axis *askewed* with respect to an axis of said auger within said upper section" in claim 1, and "said discharge spout . . . projects at said *askewed* angle from said housing" in claim 2. J&M proposes that "askewed" be accorded its plain and ordinary meaning of being "out of line" in relation to a

13

reference structure, *see* Exhibit 6 (MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2005)) (*askew*: out of line), while Kinze asserts that the term is so indefinite that a reasonable construction cannot be fathomed.

Kinze's indefiniteness argument is meritless. "A claim is invalid for indefiniteness under 35 U.S.C. § 112 ¶ 2 if its language, when read in light of the specification and prosecution history, fails to inform skilled artisans about the scope of the invention with reasonable certainty." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc*., 796 F.3d 1312, 1317 (Fed. Cir. 2015) (citing *Nautilus, Inc. v. Biosig Instruments, In*c., 134 S. Ct. 2120, 2129 (2014)). Here, both the specification and the claims themselves sufficiently define the claim term with reasonable certainty. For example, Figures 1, 3, 4, 5, 6 and 7 and 3:28-30 of the '598 Patent specification teach that discharge spout 86 is "welded to the housing 84 in a position ***askewed relative to the axis of the housing 84***." As depicted in the  annotated figures below, a person of ordinary skill in the art reading the patent's disclosure would understand discharge spout 86 as being at an "askewed" angle or "out of line" with the positioning or orientation of housing 84 in that the discharge spout 86 is not parallel to the axis H of housing 84. Furthermore, in a preferred embodiment, "[i]n the discharge position, the axis of the upper conveyor section 82 extends at an angle between 44° and 57° from a vertical plane [P] parallel to the front wall 46, at an angle between 26° and 36° from a horizontal floor plane, and at an angle between 37° and 46° from a vertical plane parallel to the left side wall 42." *Id.* at 3:17-22.



Likewise, every usage of the term "askewed" in claims 1 and 2 of the '598 Patent includes a reference structure (housing of the upper section of the auger conveyor) to which the claimed discharge spout is "askewed," meaning that the angle at which the discharge spout is situated is

15

out of line with an axis of the reference structure. For example, in the first usage of the term "askewed" in claim 1, the "housing of said upper section of said auger conveyor in said discharge position [is] inclined upwardly and forwardly and laterally outwardly including a discharge spout projecting laterally ***at an askewed angle from said housing***." *Id.* at 4:49-52. The reference structure here is the housing of the upper section of the auger conveyor in the discharge position, and the discharge spout within that housing projects laterally at an angle that is not aligned with the axis H of the housing.

The second use of the term "askewed" in claim 1 is as follows: "said discharge spout supporting a flow control spout for tilting movement on a ***substantially horizontal axis askewed with respect to an axis of said auger*** within said upper section, with said horizontal axis extending substantially parallel to a side wall of said container." *Id.* at 4:53-57. Again, when read in full, the claim language itself amply defines the reference structures to determine what "askewed" means. The "discharge spout" recited in this claim (supports a flow control spout) on a substantially horizontal axis A that is not aligned with an axis H of the upper section of the auger, and the "horizontal axis" is further described as extending substantially parallel to a side wall of the four-sided container.

Claim 2's usage of the term "askewed" likewise demonstrates the meaning of the term. In relevant portion, claim 2 states that "said discharge spout is secured to said housing of said upper section of said conveyor and projects at said ***askewed angle from said housing***…" *Id.* at 5:4-7. Consistent with the first usage of the term in claim 1, this usage also includes the word "angle" so as to emphasize to a person of ordinary skill in the art that the angle at which the discharge spout projects from the housing is "askewed" or not in alignment with the housing of the upper of the upper section of the conveyor.

16

As the party invoking Section 112, Kinze has the "burden of proving indefiniteness by clear and convincing evidence." *BASF Corp. v. Johnson Matthew Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017). To the extent Kinze asserts that "askewed" is too imprecise to satisfy the definiteness requirement, this argument necessarily falls short because "§112 does not require absolute or mathematical precision." *Id.*; *Williamson v. Google, Inc.*, 2017 WL 3232582, at *10 (N.D. Cal. July 27, 2017) ("[C]ase law does not mandate a patentee to set forth in the claim specific . . . metric for what constitutes "best suited" to meet the definiteness requirement. . . . Some modicum of uncertainty is the price of ensuring the appropriate incentives for innovation."). The definiteness requirement, so understood, mandates clarity, while recognizing that "absolute precision is unattainable." *Nautilus*, 134 S. Ct. at 212. Here, even though the claims do not enumerate a precise range of angles that would constitute an "askewed" angle, as a matter of law they need not do so. *Biosig Instruments, Inc. v. Nautilus, Inc*., 783 F.3d 1374, 1381 (Fed. Cir. 2015) (So long as "a person of ordinary skill in the art, with the aid of the specification, would understand what is claimed, the claim is not indefinite.").

To the extent Kinze argues that "askewed" is too subjective to apprise a skilled artisan of the angle at which to mount a discharge spout relative to the housing of the upper section of the auger conveyor, Kinze misses the crucial point that the '598 Patent only uses "askewed" relative to an objectively determinable reference axis. In claim 1, the discharge spout must project "laterally at an askewed angle" from the "housing of said upper section of said auger conveyor in said discharge position inclined upwardly and forwardly and laterally outwardly." In claim 2, again the "angle" of the discharge spout must be "askewed" with respect to the "housing of said upper section of said conveyor" of claim 1. Accordingly, because what is considered "askewed" is consistently defined with reference to alignment with an axis that is objectively ascertainable,

the claims are not indefinite. *See Sonix Tech. Co., Ltd. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1378 (Fed. Cir. 2017) (finding the term "visually negligible" not indefinite because an objective baseline for the term was "what [could] be seen by the normal human eye"); *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1335-36 (Fed. Cir. 2010) (holding that the term "not interfering substantially" was not indefinite, where the patent disclosed that "the binding strength of a DNA strand will depend on the length and sequence of the strand, not on the subjective opinion of the particular chemist performing the hybridization"). [2]

Kinze is wholly unable to satisfy the clear and convincing standard for invalidating the patent claims based on their use of the word "askewed." Because the patent utilizes the term to describe a position of a structure of the claimed grain cart in reference to another structure, "the intrinsic evidence informs, with reasonable certainty, skilled artisans about the scope of the invention," and the term "askewed" is not indefinite. *ClearOne, Inc. v. Shure Acquisition Holdings, Inc.*, 35 F.4th 1345, 1359 (Fed. Cir. 2022). The term should be given its plain and ordinary meaning as specified by claims 1 and 2 and taught in the patent specification.

## V. Conclusion

For the foregoing reasons, J&M requests that the Court find that none of the disputed terms of the '598 Patent requires a construction or is indefinite.

Dated: May 30, 2023                                  Respectfully submitted,

                                            By: /s/ Meng Xi
                                                Thomas D. Wolle AT0008564
                                                SIMMONS PERRINE MOYER BERGMAN PLC
                                                115 3rd St. SE, Suite 1200
                                                Cedar Rapids IA 52401
                                                Telephone: 319-366-7641
                                                Facsimile: 319-366-1917

---

[2] Though *Enzo* is a pre-*Nautilus* decision, the Federal Circuit has "relied on it in [its] post-*Nautilus* decisions." *Sonix Tech.*, 844 F.3d at 1377 n.2.

18

Email: twolle@simmonsperrine.com

Meng Xi, *pro hac vice*
Shawn D. Blackburn, *pro hac vice*
Justin A. Nelson, *pro hac vice*
SUSMAN GODFREY LLP
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: 713-651-9366
Email: mxi@susmangodfrey.com
Email: sblackburn@susmangodfrey.com
Email: jnelson@susmangodfrey.com

Kevin G. Rooney, *pro hac*
ROONEY IP, LLC
8044 Montgomery Rd., Suite 410
Cincinnati, OH 45236
Telephone: 513-274-9664
Email: krooney@rooneyiplaw.com

W.B. Markovits, *pro hac*
Jonathan Deters, *pro hac*
MARKOVITS, STOCK, DEMARCO, LLC
119 E. Court St. Suite 530
Cincinnati, OH 45202
Telephone: 513-651-3700
Email: bmarkovits@msdlegal.com
Email: jdeters@msdlegal.com

ATTORNEYS FOR PLAINTIFF/COUNTER-
DEFENDANT J&M MANUFACTURING CO.,
INC.

19

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2023, I electronically filed the foregoing with the Clerk of

the Court using the ECF system which will send notification of such filing to the following:

Glenn Johnson
Jonathan Kennedy
**McKEE, VOORHEES & SEASE, P.L.C.**
801 Grand Avenue, Suite 3200
Des Moines, IA 50309-2721
Telephone: 515-288-3667
Facsimile: 515-288-1338
Email: Glenn.Johnson@ipmvs.com
Email: Jonathan.Kennedy@ipmvs.com

***ATTORNEYS FOR KINZE MANUFACTURING, INC., DEFENDANT***

/s/ *Meng Xi*
Meng Xi